## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, FIDELIS UNDERWRITING LIMITED, AND HDI GLOBAL SPECIALTY SE, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:21-CV-5211-VMC |
| STRATEGIC CAPITAL PARTNERS, LLC, RICKY NOVAK, AND JAMES FREEMAN, | § § § § § | |
| Defendants. | § | |

## UNDERWRITERS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs Certain Underwriters at Lloyd's, Fidelis Underwriting Limited, and HDI Global Specialty SE (collectively, "Underwriters" or "Plaintiffs") file this Motion for Judgment on the Pleadings and seek a declaration that the Known Matters Exclusion precludes coverage for the Underlying Lawsuits.

### Preliminary Statement

The Known Matters Exclusion precludes coverage for any claim resulting from any alleged error an insured was aware of prior to November 1, 2019, that could reasonably be expected to give rise to a claim. The two underlying lawsuits for which Defendants Strategic Capital Partners, LLC ("SCP"), Ricky Novak, and

James Freeman (collectively, SCP, Novak, and Freeman are referred to as the "Insureds" or "Defendants") seek coverage result from—at a minimum—alleged errors they were aware of prior to November 1, 2019. As a result, the exclusion precludes coverage for the underlying lawsuits.

The two underlying lawsuits concern Defendants' promotion of conservation easement investments. After these investments were audited and the IRS issued its determination that the corresponding deductions should be disallowed *and* heavily penalized, investors filed suit against Defendants and others. Defendants requested Underwriters pay their defense costs pursuant to the insurance policy Underwriters issued, and Underwriters agreed to do so while reserving their rights to deny coverage under specified terms of the policy, including the Known Matters Exclusion.

The Known Matters Exclusion precludes coverage for the two underlying lawsuits. The exclusion applies to a **Claim** resulting from any **Wrongful Act** that Defendants were aware of prior to November 1, 2019, that "could reasonably be expected to give rise to a **Claim**." A **Wrongful Act** includes any alleged error. Defendants concede that they were aware of alleged errors prior to November 1, 2019. Specifically, they knew that the IRS disallowed tens-of-millions of dollars of deductions taken in connection with three conservation easement transactions in which Defendants' investors participated: the Green Creek Transaction, the Vista

Hill Transaction, and the Turtle River Transaction. The IRS not only disallowed the deductions taken because of these conservation easement transactions, but it also assessed 40% penalties for gross valuation misstatements. With such knowledge, any reasonable person in Defendants' shoes would expect those investors to pursue claims against them.

Unsurprisingly, investors did file lawsuits arising out of these transactions against Defendants. Accordingly, the exclusion applies, and Defendants are not entitled to coverage.

## FACTUAL BACKGROUND

**A.    The Policy and the Known Matters Exclusion.**

Underwriters issued fund and investment management liability and fraud insurance policy number FIJ0022931477 (the "Policy") to SCP for the period of November 1, 2020 to November 1, 2021.[1] The Policy provides up to $3 million in coverage.[2]

Insuring Clause Section 1 provides coverage to **Management Insureds** for "**Loss** resulting from any **Claim** made against them arising from the performance of or failure to perform **Management Services**."[3] Section 2 provides coverage to

---

[1] Dkt. 1-1 (the "Policy"); Answer, Dkt. 22 at ¶ 17 (admitting that Dkt. 1-1 is a true and correct copy of the Policy).
[2] Policy, Risk Details.
[3] Policy, Insuring Clauses, Section 1.

**Insured Persons** for "**Loss** resulting from any **Claim** made against them arising from their **Insured Capacity**" or "**Loss** for which the **Management Insured** has provided or agreed to provide indemnification to any **Insured Person**."[4] The definition of **Loss** includes **Costs, Charges and Expenses**.[5] **Costs, Charges and Expenses** includes reasonable attorneys' fees and costs incurred defending a **Claim**, and payment of **Costs, Charges and Expenses** exhausts the Policy's limits.[6]

The Policy includes the Known Matters Exclusion, which is at issue in this lawsuit. In pertinent part, this exclusion provides:

> Underwriters shall not be liable for **Loss** under this Policy in connection with any **Claim** … resulting from…
>
> iii.  any **Wrongful Act** which any **Management Insured** or **Insured Person** had knowledge of prior to the **Continuity Date** where such **Management Insured** or **Insured Person** believed at the time that such known **Wrongful Act** could reasonably be expected to give rise to a **Claim**.[7]

The **Continuity Date** is November 1, 2019.[8] The Policy defines **Wrongful Act** as:

> [A]ny actual or ***alleged*** (or, only in relation to shareholder derivative actions: proposed) error, misstatement, misleading statement, libel, slander or defamation (including injurious falsehood), act, omission, neglect, negligence, breach of duty, breach of trust, breach of

---

[4] Policy, Insuring Clauses, Section 2.
[5] Policy, Definitions Applicable to Sections 1, 2, 3, and 4 Only.
[6] Policy, Definitions Applicable to Sections 1, 2, 3, and 4 Only; General Conditions, Limit of Liability and Retentions.
[7] Policy, Exclusions Applicable to Sections 1, 2, 3, and 4 Only.
[8] Policy, Risk Details.

> warranty or authority, breach of confidentiality, or any
> breach of statute in respect of which civil liability
> arises….[9]

Thus, the exclusion hinges on whether an insured had knowledge of an actual *or alleged* error, misstatement, act, or omission (among other things) and, if so, whether that actual or alleged error, misstatement, act, or omission could reasonably be expected to give rise to a **Claim**.

## B.   The Defendants Sought Coverage for Two Underlying Lawsuits.

The Defendants are named parties in two underlying lawsuits, *Hill v. Strategic Capital Partners*, No. 2021CV345934, filed in the Superior Court of Fulton County, Georgia (the "Hill Lawsuit"), and *Hoover v. Strategic Capital Partners*, No. 21-CV-01299, pending in the United States District Court for the Northern District of Georgia (the "Class Action," and, with the Hill Lawsuit, the "Underlying Lawsuits").[10]

The Underlying Lawsuits were filed by SCP investors who obtained interests in a pass-through entity (such as an LLC) that would place a conservation easement on land in which the entity had an interest, allowing the investors to take the

---

[9] Policy, Definitions Applicable to Sections 1, 2, 3, and 4 Only (emphasis added).

[10] Underwriters have attached the Second Amended Complaint from the Hill Lawsuit as Exhibit A (the "Hill SAC") and the First Amended Class Action Complaint from the Class Action as Exhibit B (the "Class FAC"). These are public records that the Court may consider without converting the motion to a motion for summary judgment. *Universal Express, Inc. v. United States SEC*, 177 Fed. Appx. 52, 53–54 (11th Cir. 2006).

corresponding tax deduction. In each instance, the IRS disallowed the deductions and assessed penalties for gross valuation misstatements, which Defendants are challenging in Tax Court. The Underlying Lawsuits identify six conservation easement transactions: the Green Creek Transaction, the Vista Hill Transaction, the DeSoto Transaction, the Turtle River Transaction, the Bear Creek Transaction, and the Rock Spring Transaction.

### 1. The Hill Lawsuit.

The Hill Lawsuit alleged that the Defendants were liable for wrongfully promoting investments in conservation easements, and it alleged Hill was harmed by participating in two of those investments. Hill contended he invested in two entities that participated in conservation easements: Green Creek LLC (the "Green Creek Transaction") and Vista Hill Investments, LLC (the "Vista Hill Transaction").[11] From the Green Creek Transaction, Hill stated he invested $120,000 and claimed a $508,777 deduction.[12] From the Vista Hill Transaction, he stated that he invested $100,000 and claimed a $440,961 deduction.[13] In each instance, he contended the IRS disallowed the claimed deduction and determined the

---

[11] Hill SAC ¶¶ 65, 72.
[12] Hill SAC ¶¶ 65, 70.
[13] Hill SAC ¶¶ 73, 78.

conservation easement was abusive.[14] Defendants obtained a dismissal of the Hill Lawsuit.

## 2. The Class Action.

Like the Hill Lawsuit, the Class Action alleges that Defendants promoted investments in pass-through entities that claimed deductions as a result of conservation easements placed on land owned by the entity.[15] The Insureds allegedly marketed investments in the scheme by touting the potential tax-savings investors would enjoy.[16] The Class Action identifies investments in five conservation easement transactions, and it alleges Defendants were the chief promoters in each instance.[17] The Class Action alleges that the IRS audited each of the entities that claimed the charitable contribution deduction for the associated transactions, disallowed the deduction, and assessed penalties for gross valuation misstatements.

The conservation easement transactions identified in the Class Action are:

- **Turtle River Transaction:** The Class Action explains that, as a result of this transaction, an investor's $28,500 investment resulted in a $120,333 deduction, which was the investor's allocable share of the $28.5 million deduction claimed for this conservation easement.[18] The Class Action alleges that on April 17, 2017, the IRS issued its Final Partnership Administrative Adjustment ("FPAA"),

---

[14] Hill SAC ¶¶ 71, 79.

[15] Class FAC ¶¶ 1, 79–83, 89.

[16] Class FAC ¶¶ 2, 89.

[17] Class FAC ¶¶ 114 (DeSoto Transaction), 183 (Turtle River Transaction), 235 (Bear Creek Transaction), 312 (Rock Spring Transaction), 367 (Vista Hill Transaction).

[18] Class FAC ¶¶ 211, 226, 230.

disallowing the deduction and assessing a 40% gross valuation misstatement penalty.[19]

- **Vista Hill Transaction**: The Class Action alleges that, as a result of this transaction, an investor claimed a deduction of more than four times his $50,000 investment, which was the investor's allocable share of the $22,700,000 deduction claimed for this conservation easement.[20] The Class Action alleges that the IRS issued its FPAA on June 24, 2019, which disallowed the entire deduction and assessed a gross valuation misstatement penalty.[21]

- **Bear Creek Transaction:** The Class Action explains that, as a result of this transaction, a $54,000 investment resulted in a $228,887 deduction, which was the investor's share of the total deduction claimed for this conservation easement.[22] The Class Action alleges the IRS issued its FPAA on July 20, 2020, which disallowed the entire contribution and imposed a 40% penalty.[23]

- **DeSoto Transaction:** The Class Action describes an investor's investment into this transaction: in exchange for $135,000 investment, the investor claimed a $421,799 tax deduction, which was the investor's allocable share of the more than $25 million deduction claimed for this conservation easement.[24] The Class Action alleges that in August 2020, the IRS issued its FPAA disallowing the deduction and assessing a gross valuation misstatement penalty of 40%.[25]

- **Rock Spring Transaction:** The Class Action explains that, as a result of this transaction, a $39,750 investment was used to claim a $168,114 deduction, which was the investor's allocable share of the $23,560,000 deduction claimed as a result of this conservation easement.[26] The Class Action alleges the IRS issued its FPAA on August 7, 2020, which disallowed the entire contribution and imposed a 40% penalty.[27]

---

[19] Class FAC ¶ 230.
[20] Class FAC ¶¶ 392, 424, 431.
[21] Class FAC ¶ 431.
[22] Class FAC ¶¶ 270, 307.
[23] Class FAC ¶ 310.
[24] Class FAC ¶¶ 141, 176, 181.
[25] Class FAC ¶ 181.
[26] Class FAC ¶¶ 346, 358, 360.
[27] Class FAC ¶ 365.

C.    **Underwriters File the Coverage Action.**

Defendants retained King & Spalding to defend the Underlying Lawsuits, and Underwriters agreed to pay the reasonable and necessary **Costs, Charges, and Expenses**. In each of their reservation of rights letters, Underwriters reserved their rights under the Known Matters Exclusion.[28] This reservation was necessary, as Underwriters explained to the Defendants in their September 15, 2021 letters, "because it appears that the [Underlying Lawsuits] result[] from a **Wrongful Act** which an Insured had knowledge of prior to the November 1, 2019 **Continuity Date**."[29]

Underwriters then filed this declaratory judgment action (the "Coverage Action") seeking a declaration that the Policy's Known Matters Exclusion precludes coverage for the Underlying Lawsuits. As discussed above, the exclusion applies to any **Claim** resulting from any **Wrongful Act** that a Defendant had knowledge of

---

[28] Answer ¶¶ 71, 72; Exhibit C, Reservation of Rights Letter for Hill Lawsuit (March 15, 2021); Exhibit D, Supplemental Reservation of Rights Letter for Hill Lawsuit (Sept. 15, 2021); Exhibit E, Reservation of Rights Letter for Class Action (June 25, 2021); Exhibit F, Supplemental Reservation of Rights Letter for Class Action (Sept. 15, 2021). Because these exhibits are central to Defendants' affirmative defenses of waiver and estoppel, the Court may consider them without converting this motion to a motion for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002).

[29] Answer ¶¶ 71, 72; Exhibit D, Supplemental Reservation of Rights Letter for Hill Lawsuit (Sept. 15, 2021); Exhibit F, Supplemental Reservation of Rights Letter for Class Action (Sept. 15, 2021).

prior to November 1, 2019, and knew, or should have known, could give rise to a **Claim**.

Defendants' answer admits to several key facts triggering the Known Matters Exclusion. They concede that, before November 1, 2019, they knew "that the IRS had disallowed charitable contribution deductions taken by certain LLCs that ultimately donated conservation easements and that the IRS sought to impose penalties on these LLCs."[30] Regarding each investment at issue in the Underlying Lawsuits, Defendants admit:

- **Green Creek Transaction:** On March 31, 2017, prior to the **continuity date**, the IRS sent an FPAA to Green Creek LLC that stated the IRS disallowed Green Creek's claimed $19.6 million charitable contribution and that a 40% penalty would be imposed.[31] "Defendants … knew that the IRS sought to disallow the deduction associated with Green Creek and assess penalties."[32]

- **Turtle River Transaction:** On April 17, 2017, prior to the **continuity date**, the IRS "assert[ed] that it intended to disallow the deduction claimed by Turtle River and assess penalties against it."[33] Defendants "were aware the IRS sought to disallow the deduction claimed by Turtle River and assess penalties against it."[34]

- **Vista Hill Transaction:** On June 24, 2019, prior to the **continuity date**, the IRS disallowed an approximately $22 million deduction claimed by Vista Hill Investments, LLC.[35] Defendants admit that the IRS sought to impose penalties as

---

[30] Answer ¶ 7; *see also* Answer ¶ 4 (admitting that, with respect to the investments in the Class Action, "the IRS disallowed charitable contribution deductions and assessed penalties in April 2017, June 2019, July 2020, and August 2020").

[31] Answer ¶¶ 3, 37.

[32] Answer ¶ 39; *see also* Answer ¶ 40 ("Defendants admit that the IRS sought to disallow the charitable contribution deduction taken by Green Creek, LLC.").

[33] Answer ¶ 50.

[34] Answer ¶ 51.

[35] Answer ¶¶ 3, 42, 64.

well.[36] Defendants "knew that the IRS sought to disallow the deductions associated with Vista Hill and assess penalties."[37]

Although occurring after the **continuity date**, Defendants also admit the IRS alleged that the deductions should be disallowed and penalties assessed as a result of the DeSoto Transaction, the Bear Creek Transaction, and the Rock Spring Transaction.[38]

Thus, of the six transactions identified in the Underlying Lawsuits, Defendants admit that they were aware prior to November 1, 2019 that the IRS had disallowed the associated deductions and assessed penalties for gross valuation misstatements in 50% of them. Any reasonable person in Defendants' shoes would have anticipated a **Claim** to arise from such alleged errors and misstatements, i.e., **Wrongful Acts**. And, as the Underlying Lawsuits evidence, that is precisely what happened.

## ARGUMENT

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm*

---

[36] Answer ¶¶ 42, 64.
[37] Answer ¶¶ 43, 65.
[38] Answer ¶¶ 54, 57, 61.

11

*Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "Where the plaintiff moves for judgment on the pleadings, the fact allegations of the answer are taken to be true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer." *Wc Oil & Gas v. Alpine Dev.*, 4:19-cv-00117, 2020 WL 4747619, at *2 (June 30, 2020) (quoting *Parker v. DeKalb Chrysler Plymouth*, 459 F. Supp. 184, 187 (N.D. Ga. 1978)). The applicable standard of review is essentially "identical to the standard used to decide motions to dismiss." *Piccard v. Deedy*, No. 1:21-CV-558-MLB, 2022 WL 832425, at *3 (N.D. Ga. Mar. 21, 2022) (citing and quoting *Doe v. Bd. of Cnty. Comm'rs*, 815 F. Supp. 1448, 1449 (S.D. Fla. 1992)) (internal quotation marks omitted). "[A] successful plaintiff may show judgment on the pleadings is warranted if the defendant admits allegations establishing liability and 'all of the defenses of the answer are legally insufficient.'" *Vann v. Inst. of Nuclear Power Operations, Inc.*, No. 1:09-CV-1169-CC-LTW, 2010 WL 11601718, at *2 (N.D. Ga. July 15, 2010) (quoting *Lenz v. Universal Music Corp.*, No. C07-3783 JF, 2010 WL 702466, at *2 (N.D. Cal. Feb. 25, 2010)).

### A. The Known Matters Exclusion Precludes Coverage.

The Known Matters Exclusion turns on whether Defendants knew of allegations of errors, misstatements, acts, or omissions; when they knew of the allegations; and whether they should have expected a **Claim** with that knowledge.

12

As discussed above, this exclusion precludes coverage for any **Loss** in connection with a **Claim** resulting from "any **Wrongful Act** which any [Insured] had knowledge of prior to [November 1, 2019] where such [Insured] believed at the time that such known **Wrongful Act** could reasonably be expected to give rise to a **Claim**."[39] The Policy's definition of **Wrongful Act** includes any "actual or ***alleged*** … error, misstatement … act, omission, neglect, negligence."[40] Thus, if any Defendant had knowledge of any ***alleged*** errors, misstatements, acts, omissions, or negligence before November 1, 2019, and they "believed at the time that such known [alleged error, etc.] could reasonably be expected to give rise to a **Claim**," then the exclusion applies.[41] Such is the case here.

This exclusion is commonly known as a prior knowledge exclusion. As the Eleventh Circuit has explained, such exclusions "are 'common in claims-made policies because they ensure that only risks of unknown loss are potentially incurred, and prevent an insured from obtaining coverage for the risk of a known loss, which would be unfair to the insurer.'" *Berkley Assur. Co. v. Expert Grp. Int'l Inc.*, 779

---

[39] Policy, Exclusions Applicable to Sections 1, 2, 3, and 4 Only; Risk Details.

[40] Policy, Definitions Applicable to Sections 1, 2, 3, and 4 Only (emphasis added).

[41] Defendants fall within the definitions of **Management Insured** and **Insured Person**, and the definition of **Claim** includes a lawsuit such as the Underlying Lawsuits. Policy, Definitions Applicable to All Sections; Definitions Applicable to Sections 1, 2, 3, and 4 Only.

Fed. Appx. 604, 611 (11th Cir. 2019) (quoting *Cohen-Esrey Real Estate Servs. Inc.
v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1303 (10th Cir. 2011)).

When applying this exclusion, courts in Georgia apply a subjective-objective
test. Under this test, the court first asks if the insured was aware of a fact or
circumstance and then, if so, what a reasonable insured would expect with that
knowledge. *See Carolina Cas. Ins. Co. v. Alavi*, No. 1:10-cv-0750, 2012 WL
13001889, at *9 (N.D. Ga. Sept. 26, 2012). If a reasonable insured would expect a
claim to result, then the exclusion applies.

There is no doubt that Defendants had subjective knowledge of **Wrongful
Acts** concerning the investments at issue in the Underlying Lawsuits prior to
November 1, 2019. They knew the IRS issued, to at least three entities that they
promoted investments for, FPAAs disallowing the deductions and assessing
substantial penalties. They knew that the IRS issued an FPAA on March 31, 2017,
disallowing the deduction and assessing penalties for the Green Creek Transaction.[42]
They also knew that the IRS issued an FPAA on April 17, 2017, disallowing the
deduction and assessing penalties for the Turtle River Transaction.[43] And they knew
that the IRS issued an FPAA on June 24, 2019, disallowing the $22 million
deduction and assessing penalties for the Vista Hill Transaction.[44]

---

[42] Answer ¶¶ 3, 37, 39–40.
[43] Answer ¶¶ 50–51.
[44] Answer ¶¶ 42–43, 64–65.

Thus, prior to November 1, 2019, Defendants knew—*at a minimum*—that the IRS alleged that three of the syndicated tax conversation easement transactions should lose their claimed charitable deductions *and* be penalized for gross valuation misstatements. The investors would not only lose the claimed deductions (hundreds of thousands of dollars each), but they would also have to pay their allocated share of the penalties (additional thousands per investor). Any reasonable person involved in that transaction would, or should, expect a **Claim** to result. Of course, two **Claims**—the Underlying Actions—did result.

The Underlying Actions allege that Defendants are liable for their actions in connection with the exact same disallowed and penalized syndicated conservation easement deductions identified by the IRS prior to November 1, 2019. Accordingly, the Known Matters Exclusion applies.

It is no defense that Defendants may have believed that no lawsuit would result from the IRS's determinations. Nor is it a defense if Defendants believed the IRS was wrong in its determination. *See Ettinger & Assocs. v. Hartford / Twin City Fire Ins. Co.*, 22 F.Supp.3d 447, 455 (E.D. Pa. 2014) (finding insured's objective knowledge of underlying allegations, and not subjective belief, determines whether prior knowledge exclusion applies). The Policy not only provides coverage for settlements and judgments, but it also provides coverage for defense costs. No insurer would issue a policy providing coverage for a lawsuit that the insured should

know is coming. Because of that, the Known Matters Exclusion precludes coverage where Defendants have knowledge of an alleged error or misstatement that a reasonable person would expect to lead to a lawsuit—regardless the merit of the lawsuit.[45]

In short, when the IRS asserts that tens-of-millions of dollars of tax deductions should be disallowed, *and* penalties imposed, and those amounts will flow through to investors, any reasonable person involved in promoting those investments would expect a lawsuit. As that is the case here, the exclusion applies.

### B.  Defendants' Affirmative Defenses Do Not Preclude a Declaration That the Known Matters Exclusion Applies to the Underlying Lawsuits.

Defendants assert a host of affirmative defenses, and none preclude the relief Underwriters seek.

<u>First</u>, Defendants contend that the duty to indemnify is not ripe, as no judgments or settlements have been entered in the Underlying Lawsuits.[46] Although the duty to defend and the duty to indemnify are independent, "the duty to indemnify may be ripe for adjudication where a court finds no duty to defend, and 'logic and common sense' make clear that the duty to indemnify would be governed by the same facts and contractual provisions." *Capitol Specialty Ins. Corp. v. PTAV, Inc.*,

---

[45] Policy, Definitions Applicable to Sections 1, 2, 3 and 4 Only (defining **Claim** to include "any civil … proceedings alleging a **Wrongful Act**" and **Wrongful Act** to include an "alleged … error").

[46] Answer, First Affirmative Defense.

331 F. Supp. 3d 1329, 1334 (N.D. Ga. 2018). Here, because there is no duty to defend, there is no duty to indemnify either. As discussed above, the Known Matters Exclusion precludes coverage for the Underlying Lawsuits because they are **Claims** resulting from **Wrongful Acts** that Defendants were aware of prior to the **Continuity Date**. As such, the duty to indemnify is governed by the same facts and contract provisions, and this affirmative defense fails.

Second, Defendants' claims are not barred by the doctrine of unclean hands.[47] "[T]he equitable defense of 'unclean hands' is not generally available in a declaratory judgment action, which is normally considered an action at law, rather than an equitable action." *Trade Am Int'l, Inc. v. Cincinnati Ins. Co.*, No. 1:08-cv-3711, 2010 U.S. Dist. LEXIS 152568, at *21 (N.D. Ga. June 4, 2010) (quoting *Holmes v. Henderson*, 549 S.E.2d 81, 84 (Ga. 2001)). Because Underwriters seek a declaration of their rights under a contract, this doctrine does not apply.

Third and fourth, the doctrines of waiver and estoppel do not preclude the Court from entering judgment for Underwriters.[48] Underwriters seek a declaration of no coverage under an exclusion in the policy. Underwriters' reservation of rights letters specifically identify the Known Matters Exclusion,[49] and Underwriters reserved their right to deny coverage while agreeing to pay **Costs, Charges and**

---

[47] Answer, Second Affirmative Defense.
[48] Answer, Third and Fourth Affirmative Defenses.
[49] Answer ¶¶ 71–73.

**Expenses**.[50] Thus, Underwriters have not waived their right, and they are not estopped from obtaining a declaration that the Known Matters Exclusion applies. Moreover, the Known Matters Exclusion is a coverage defense. "[U]nder Georgia law, such defenses cannot be waived because the doctrines of waiver and estoppel 'may not be used to enlarge the coverage contained in a policy of insurance.'" *AEGIS Elec. & Gas Int'l Servs. v. ECI Mgmt. LLC*, 967 F.3d 1216, 1226 n.8 (11th Cir. 2020) (quoting *Sargent v. Allstate Ins. Co.*, 303 S.E.2d 43, 45–46 (Ga. Ct. App. 1983)).

Fifth, Defendants assert the affirmative defense that they "acted in good faith at all times."[51] However, their subjective intent is not relevant to the Known Matters Exclusion. *See, e.g.*, *Alavi*, 2012 WL 13001889, at *9. They had knowledge of the IRS's assertion that deductions should be disallowed and penalized, and a reasonable person with that knowledge would expect investors to pursue claims as a result. Defendants' good or bad faith intent has nothing to do with the exclusion.

Sixth, Defendants assert that the Known Matters Exclusion is "unenforceable under applicable Georgia law."[52] There is no authority for this assertion. To the contrary, "[i]n Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Lee, Black, Hart & Rouse, P.C. v. Travelers Indem. Co.*, 662 S.E.2d 889, 891 (Ga. Ct. App. 2008).

---

[50] Answer ¶¶ 71–72.
[51] Answer, Fifth Affirmative Defense.
[52] Answer, Sixth Affirmative Defense.

<u>Finally</u>, Defendants assert that the Complaint fails to state a claim upon which relief can be granted.[53] Of course, that is not accurate. The Complaint identifies the Underlying Lawsuits, it describes their allegations and Underwriters' agreement to pay **Costs, Charges and Expenses** subject to a reservation of rights, and it explains why the Known Matters Exclusion applies. Accordingly, this defense fails.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Court hold that the Known Matters Exclusion precludes coverage for the Underlying Lawsuits or, alternatively, that it precludes coverage for the Class Action.

Dated:  September 14, 2022                    Respectfully submitted,

<div style="margin-left:40%;">

/s/ *Matthew E. Pepping.*

Matthew E. Pepping (*pro hac vice*)
Manuel Mungia, Jr. (*pro hac vice*)
CHASNOFF MUNGIA VALKENAAR PEPPING &
STRIBLING LLP
1020 N.E. Loop 410, Suite 150
San Antonio, TX 78209
Tel: 210-469-8499
Email:  mpepping@chasnoffstribling.com
Email:  mmungia@chasnoffstribling.com

John C. Bonnie
Georgia Bar No. 067540
WEINBERG WHEELER HUDGINS
GUNN & DIAL
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326

</div>

---

[53] Answer, Seventh Affirmative Defense.

19

Tel:  404-876-2700
Email: jbonnie@wwhgd.com

*Counsel for Plaintiffs Certain Underwriters at Lloyd's, Fidelis Underwriting Limited, and HDI Global Specialty SE*

## CERTIFICATE OF SERVICE

On September 14, 2022, the foregoing document was electronically served on all counsel of record.  I hereby certify that all counsel have been served electronically or by another manner authorized under the Federal Rules of Civil Procedure.

/s/ *Matthew E. Pepping.*
Matthew E. Pepping